UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN MCHUGH, *et ano.*,

                        Plaintiffs,      :      18cv788

             -against-      :      OPINION & ORDER

UNITED SKATES OF AMERICA,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiffs John and Kathleen McHugh bring this personal injury action against Defendant United Skates of America ("United Skates"). John McHugh ("McHugh") claims that he fell and injured himself because United Skates was negligent in supervising its roller rink facility and maintaining its equipment. Kathleen McHugh brings a related claim for loss of consortium. United Skates moves for summary judgment dismissing the action in its entirety. For the reasons that follow, United Skates's motion is denied.

BACKGROUND

        On July 29, 2016, Plaintiffs went roller skating at a United Skates facility in Seaford, New York. (Def.'s Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, ECF No. 35-2 ("Def.'s 56.1"), ¶ 2.) McHugh rented his skates, used them for roughly forty-five minutes, and then fell. (Def.'s 56.1, ¶¶ 5, 7.) McHugh did not notice any problem with his skates up until his accident, nor did he complain to any United Skates employees about his equipment or the behavior of other patrons. (Def.'s 56.1, ¶¶ 11, 14.)

        The parties offer competing narratives of why McHugh fell. McHugh claims that he was trying to avoid a little girl who skated across his path against the flow of traffic when the

wheel in his skate locked up. (Pls.'s Resp. to Def.'s Statement of Material Facts & Statement of Material Facts, ECF No. 38 ("Pls.'s 56.1"), ¶ 6.) Though United Skates appears to concede in its statement of facts that McHugh was attempting to prevent a collision, (Def.'s 56.1, ¶ 13), it then argues in its brief that there was no one near McHugh when he fell and that he merely lost his balance. United Skates also asserts that there was nothing wrong with McHugh's skates.

From these disputed facts, McHugh contends that United Skates was negligent in (1) failing to supervise and control the patrons of the rink and (2) failing to clean and maintain the skates. United Skates argues that it is entitled to summary judgment because McHugh assumed an ordinary risk of roller skating—namely, that he would lose his balance and fall. On a fundamental level, the parties' dispute over what caused McHugh's fall precludes summary judgment. But some further discussion is warranted.

## DISCUSSION

I. Legal Standard

Summary judgment is only appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden to demonstrate "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is no genuine issue for trial where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation omitted). A court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). After the movant makes its initial showing that there is no triable material issue of fact, the burden shifts to the non-movant to "set out specific facts showing a genuine issue for trial"

without relying merely on allegations or denials in the pleadings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).

II.     Negligence and Assumption of the Risk

"In New York, negligence requires establishing: '(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" DePalma v. Maya Murphy, P.C., 2017 WL 5991783, at *4 (S.D.N.Y. Dec. 1, 2017) (quoting Pasternack v. Lab. Corp. of Am. Holdings, 59 N.E.3d 485, 490 (N.Y. 2016)).  Premises owners owe a duty to exercise reasonable care to protect their customers from harm.  Moore v. First Fed. Sav. and Loan Ass'n of Rochester, 654 N.Y.S.2d 900, 901 (N.Y. App. Div. 1997).  However, under the "assumption of the risk" doctrine, owners and operators of recreational sporting facilities do not owe a duty of care to protect patrons from "commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation."  Morgan v. New York, 685 N.E.2d 202, 207 (N.Y. 1997).

Accordingly, recovery in a negligence suit is barred where "a consenting participant in sporting and amusement activities is aware of the risks [of the activities]; has an appreciation of the nature of the risks; and voluntarily assumes the risks."  Bukowski v. Clarkson Univ., 971 N.E.2d 849, 850 (N.Y. 2012).  As applied here, a skater may assume the risk that he will lose his balance and fall.  See Mor v. Yakov, 681 N.Y.S.2d 586, 587 (N.Y. App. Div. 1998).  Similarly, "[w]here a skater is struck by an unknown skater and no amount of supervision could have prevented the accident, a roller skating rink bears no liability for failure to supervise." Blashka v. S. Shore Skating, Inc., 598 N.Y.S.2d 74, 74 (N.Y. App. Div. 1993).

However, "[a]wareness of the risk . . . is not to be determined in a vacuum." Guzman v. Iceland, 795 N.Y.S.2d 745, 746 (N.Y. App. Div. 2005).

> [An] important counterweight to an undue imposition of the assumption of the risk doctrine is that participants will not be deemed to have assumed . . . unreasonably increased risks . . . . Therefore, in assessing whether a defendant has violated a duty of care within the genre of torts-sports activities and their inherent risks, the applicable standard should include whether the conditions caused by the defendants' negligence are unique and created a dangerous condition over and above the usual dangers that are inherent in the sport.

Morgan, 662 N.Y.S.2d at 427.  A court must also consider "the skill and experience of the particular plaintiff."  Guzman, 795 N.Y.S.2d at 746.

III.   Application

   A. Inadequate Supervision

Turning first to McHugh's inadequate supervision claim, "[a rink operator] has a duty to control the reckless conduct of skaters on its premises where it is aware of the conduct, where the risk posed by the conduct is either unassumed, concealed, or unreasonably increased, and where the risk could have been mitigated or prevented through adequate supervision." Nunez v. Recreation Rooms & Settlement, Inc., 645 N.Y.S.2d 789, 791 (N.Y. App. Div. 1996). However, the risk of a sudden collision with another skater is deemed assumed, and the skating rink bears no liability for failure to supervise, if the "action could not have been anticipated or avoided by the most intensive supervision." Winter v. City of N.Y., 617 N.Y.S.2d 833, 833 (N.Y. App. Div. 1994).  Here, summary judgment is inappropriate because there are outstanding disputes as to (1) whether United Skates breached its duty to McHugh by failing to control the behavior of its patrons; and (2) whether that failure caused another skater to wander into McHugh's path, precipitating his fall.

First, there is ample evidence to suggest that United Skates's supervision was inadequate and that the risk of a collision was unduly increased.  McHugh testified during his deposition that prior to his accident, he observed "a lot of disarray and people . . . skating in the

4

wrong direction and people intersecting one another" who "weren't being directed [] well by the referee." (Affirm. of Magda Demoya Coyle, Esq. in Supp. of Def.'s Mot. for Summ. J., ECF No. 35-1 ("Coyle Affirm."), Ex. D ("McHugh Dep."), at 19:10–12, 20:5–6.)

United Skates contends that their video footage from the accident demonstrates that the rink was properly supervised. "While [] video evidence submitted by the parties [should] certainly be considered and carefully reviewed, summary judgment is appropriate only where the video evidence in the record is sufficient to blatantly contradict[] one party's versions of events." Fana v. City of N.Y., 2018 WL 1581680, at *6 (S.D.N.Y. Mar. 27, 2018) (second, third, and fourth alterations in original) (citation and quotation marks omitted). But the footage, which includes only a few seconds prior to the accident, is hardly dispositive. Contrary to United Skates's contentions, the footage does not unequivocally show the skaters moving in the same direction and being well-directed. (See Coyle Affirm., Ex. H ("Surveillance Video").) Some patrons appear to be stationary in the middle of the floor and others—including the girl in question—move against the flow of traffic. (See Surveillance Video.) And despite United Skates's claim that there were three referees on duty that night, the video only shows one guard near McHugh when he fell, who appears to make no effort to corral the other skaters moving in different directions. (See Surveillance Video.)

Second, as to causation, United Skates contends that there was no one near McHugh when he fell. The video suggests the opposite. Not only is the footage itself grainy, but there also appears to be a girl who comes close to crossing McHugh's path shortly before his fall. (See Surveillance Video.) McHugh's deposition testimony comports with this interpretation of the video, even if he could not identify the girl with certainty from the pixelated footage. (See McHugh Dep., at 23:7–13.) And though McHugh apparently failed to mention the

crowded rink or an errant skater to anyone at the time of the accident, this issue goes to the consistency of his story and his credibility as a witness, which is not to be determined on summary judgment.  See Manganiello v. City of N.Y., 612 F.3d 149, 161 (2d Cir. 2010) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

United Skates ultimately fails to point to anything in the record beyond its own inconclusive interpretation of the video to contradict McHugh's version of the facts.  And in view of these unresolved disputes, this Court cannot determine whether the near-collision in-question could not have been avoided even with the most attentive supervision.  See, e.g., Nunez, 645 N.Y.S.3d at 789 (denying summary judgment where there were issues regarding the "nature and duration" of patrons' "unruly behavior," as well as the rink operators' actual or constructive knowledge of that behavior).

B.  Defective Skates

"[A] premises owner continues to owe a duty to exercise care to make conditions as safe as they appear to be."  Morgan, 662 N.Y.S.2d at 426 (citation and quotation marks omitted).  Thus, a participant in recreational activity will not be deemed to have assumed the risk of concealed conditions.  Bunn v. Town of N. Hempstead, 971 N.Y.S.2d 118, 119 (N.Y. App. Div. 2013).  To hold a business owner liable for a defective, concealed condition on the premises, a plaintiff must demonstrate that the condition existed at the time of the accident and that the defendant had notice of or created the defect.  Schiano v. TGI Friday's, Inc., 613 N.Y.S.2d 881, 882 (N.Y. App. Div. 1994).

Here, Plaintiffs contend that United Skates had not cleaned the skates that

McHugh rented, and that United Skates negligently allowed dirt, grease, and hair to accumulate in the skate bearings. This build-up prevented the wheels from turning properly, which caused McHugh's skates to lock up and led to his fall. According to Plaintiffs, the dirtiness of the skates was a concealed condition that precludes the assumption of the risk defense. Much of United Skates's counterargument concerns the discrediting of Plaintiffs' retained expert, Edward Wankel. In broad strokes, United Skates contends that summary judgment is appropriate because Wankel's report, which attributes McHugh's fall to the allegedly faulty skate bearings, is conclusory and not based on any reliable scientific foundation.

Under Federal Rule of Evidence 702,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Under [Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)], the district court functions as the gatekeeper for expert testimony . . . whether proffered at trial or in connection with a motion for summary judgment." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d. Cir. 2008) (citation and quotation marks omitted). The expert's testimony must "rest[] on a reliable foundation and [be] relevant to the task at hand." Daubert, 509 U.S. at 597; accord Campbell v. Metro. Prop. & Cas. Ins. Co., 239 F.3d 179, 184 (2d Cir. 2001). This analysis is not limited purely to scientific testimony, but also applies to technical or other specialized knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999).

After reviewing Wankel's report and deposition testimony, this Court is

unconvinced that his analysis would help the trier of fact and accordingly declines to consider it on summary judgment. See Riegel v. Medtronic, Inc., 451 F.3d 104, 127 (2d Cir. 2006) ("[T]his Circuit has explained that it is appropriate for the district court to determine the admissibility of scientific evidence and to rely only on admissible evidence in ruling on summary judgment."). Simply put, Wankel's report contains "little [to] no analysis," In re Mirena IUD Prod. Liab. Litig., 169 F. Supp. 3d 396, 477 (S.D.N.Y. 2016), and his conclusions make no reference to his purported expertise. See Riegel, 451 F.3d at 127 ("An expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." (emphasis added)).

"[E]xpert testimony is not helpful if it simply addresses 'lay matters which the jury is capable of understanding and deciding without the expert's help.'" Faulkner v. Arista Records LLC, 46 F. Supp. 3d 365, 375 (S.D.N.Y. 2014) (quoting United States v. Mulder, 273 F.3d 91, 101 (2d Cir. 2001)); see also In re Fosamax Prods. Liab. Litig., 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009). Here, Wankel attempted to engineer a "roll test" to replicate the skate lock-up, but he misreported his findings and conceded that without any kind of weight on the skate, the test could not replicate the relevant conditions. (See Coyle Affirm., Ex. I ("Wankel Dep."), at 82:12–24.) Aside from that failed test, Wankel took the skates apart, observed the dirt and grease on the bearings, consulted United Skates's regulations regarding skate cleaning, and concluded: (1) that the skate bearings had not been properly cleaned, and (2) among other possible causes, the dirty bearings froze the skate. (See Coyle Affirm., Ex. J ("Wankel Rep."), at 10–11.) A jury would be "fully capable of performing the simple [analysis] that [Wankel] perform[ed] in his report," as he "dr[ew] on no expertise" in making this determination. Crawford v. Franklin Credit Mgmt. Corp., 2015 WL 13703301, at *6 (S.D.N.Y. Jan. 22, 2015).

Thus, his testimony and report on this issue improperly usurp the role of the factfinder. Crawford, 2015 WL 13703301, at *6; see also In re Rezulin Prod. Liab. Litig., 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding expert testimony where it consisted of a "narrative of the case which a juror is equally capable of constructing").

"If a proffer of expert testimony is excluded as inadmissible pursuant to [Fed. R. Civ. P.] 702, the court must make the summary judgment determination on a record that does not include that evidence." Lipps v. Bairnco Corp., 249 F. Supp. 2d 357, 386 (S.D.N.Y. 2003) (alteration in original) (citation and quotation marks omitted). Though United Skates claims there is no evidence of the alleged defect, the photographs of the wheel bearings plainly show a build-up of hair, grease, and dirt in the skates. (Affirm. of Daniel C. Perrone in Opp. to Def.'s Mot. for Summ. J., ECF No. 36 ("Perrone Affirm."), Exs. D, E ("Inspection Photos").) The condition of the skates is at odds with United Skates's training manual, which requires that "bearings . . . must be cleaned [and] de-greased." (Perrone Affirm., Ex. B ("United Skates Training Manual"), at 18.) As the bearings are not visible to the casual observer, there is little doubt that any debris build-up was "concealed." And the video footage does not "blatantly contradict" McHugh's story—the skates are hardly visible in the pixelated footage, let alone their inner mechanisms.

Regarding creation or notice of the defect, United Skates offers no conclusive evidence that the skates had been cleaned prior to McHugh's session. Though United Skates cites to its guidelines requiring that skates should be cleaned, that is not evidence that they were in fact maintained properly. Plus, United Skates's manager admitted in her testimony that she never saw anyone de-grease the skates. (See Coyle Affirm., Ex. F ("Ingenito Dep."), at 34:4–20.) And a reasonable jury could find that the sheer size of the larded mass of hair, grease, and

dirt depicted in the inspection photos suggests that United Skates was lax in regular cleanings, thereby causing the build-up, or that the blockage could not have accumulated in a single forty-five minute session. (See Inspection Photos; Ingenito Dep. at 29:9–15 ("[T]hey would have to roll over [dirt, hair, and grease] a lot" for it to build up in the skate bearings.).)

As for causation, United Skates's own safety manual states that "[t]hese bearings will rarely freeze unless they are not maintained properly." (United Skates Training Manual at 18.) McHugh further testified that he felt a lock-up in his skates, which caused him to fall. (McHugh Dep. at 25:12–18.) And the fact that he did not complain about defective skates immediately following the accident is a matter of credibility to be addressed by a jury.

## CONCLUSION

For the foregoing reasons, United Skates's motion for summary judgment is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 35.

Dated:  July 2, 2019            SO ORDERED:
        New York, New York

_____
WILLIAM H. PAULEY III
U.S.D.J.